UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BRENDA DILLAHUNT,

                            Plaintiff,

            v.

SOCIAL SECURITY ADMINISTRATION,

                            Defendant.

**MEMORANDUM AND ORDER**
18-CV-4933 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

      Plaintiff Brenda Dillahunt, proceeding pro se, brings the instant action against her former employer, the United States Social Security Administration (the "SSA"), asserting claims for retaliation, discrimination, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634.  Defendant moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety for lack of subject-matter jurisdiction and failure to state a claim.

## BACKGROUND[1]

      Plaintiff is a 49-year-old African American woman and a former "decisional writer" in the SSA's Brooklyn office.  (Compl. 5.)  During her employment with the SSA, Plaintiff exhibited exemplary performance.  (*Id*. 11.)  Indeed, prior to the events giving rise to the instant action, Plaintiff received commendable employment evaluations, held a "blemish free" employment record, and "had never received a negative evaluation, write-up or suspension."  (*Id*.)

---

[1] The following facts are taken from the complaint and are assumed to be true for purposes of deciding the instant motion.  (ECF No. 1.)  Citations to the complaint refer to the pagination assigned by the Court's ECF system.

In or about January 2014, Plaintiff was advised that she, and several other African American employees, were being placed on "timeframes" for "decisional writings."[2] (*Id*. 10.) In or about March 2014, Plaintiff's supervisor, Lisa McGhee, assigned Plaintiff a mentor to assist Plaintiff in increasing her writing speed to comply with the SSA's policy that all decisional writings be completed within a prescribed period (the "Policy"). (*Id*.) Plaintiff worked with her mentor for only two days. (*Id*. 11.) According to the complaint, the research and writing methods recommended by Plaintiff's mentor were counterproductive, and resulted in "slower work production and performance related issues." (*Id*.) Because Plaintiff was unable to effectively implement her mentor's suggested methods, her "performance suffered immeasurably." (*Id*.)

On or about January 23, 2015, McGhee and Plaintiff met to discuss Plaintiff's draft decisions. (*Id*.) During this discussion, Plaintiff was informed that her writing required corrections, included run-on sentences, and that Plaintiff was "taking 'too long' or exceeding timeframes." (*Id*.) Subsequent to the January 23 meeting, the SSA placed Plaintiff on a "30-day 100% review" to determine whether a Performance Assessment Plan ("PAP") was necessary. (*Id*. 12.) Plaintiff and another African American woman were the only decision writers placed on such a review. (*Id*.) During this period, Plaintiff took time off from work and therefore, as a result, Plaintiff's work was reviewed for less than 30 days. (*Id*.) On or about February 24, 2015, Plaintiff again met with McGhee and was advised that she was being placed on a PAP because her performance had not improved since the January 23 meeting. (*Id*.) The SSA did not provide Plaintiff with a structured plan for her PAP, and instead merely informed her that her PAP would

---

[2] The Court construes Plaintiff's references to "timeframes" as the time period given to complete decisional writings.

2

consist of videos and classes, if needed. (*Id.*) As a result, Plaintiff was "left to her own devices to formulate a method that would increase her performance in the face of Defendant's evolving timeframe policy." (*Id.*) Additionally, although Plaintiff was assigned several mentors, she was instructed not to confer with them for assistance. (*Id.*) Instead, Plaintiff was instructed to await a response from her supervisor. (*Id.*) This directive limited Plaintiff's caseload and overall productivity. (*Id.*) As a result, Plaintiff was "relegated to spending days watching videos on demand or reviewing study materials or feedback from prior drafts" rather than working on cases. (*Id.*) When Plaintiff submitted decision drafts, she was penalized for failing to meet timeframes, despite the fact that the delay resulted from the time spent awaiting her supervisors' responses. (*Id.*)

Plaintiff made complaints of discrimination to the SSA's management via email and written letters, and filed numerous "EEO complaints" highlighting the racial disparities that existed within SSA. (*Id.* 12, 14.) Among other things, Plaintiff alleged that "African Americans were treated unfairly and adversely, whereas those outside of her protected group [were] given corrective or differing opportunities to improve." (*Id.*) The SSA, however, failed to investigate any of Plaintiff's complaints or to advise Plaintiff of her rights under the No Fear Act. (*Id.* 14.)

Because Plaintiff complained of disparate treatment, she was further harassed by McGhee, who unreasonably monitored and scrutinized her, and held her to a different standard than her non-African American counterparts. (*Id.* 13-14.) Among other things, McGhee deprived Plaintiff of leave time, barred Plaintiff from using duty time, and required Plaintiff to seek permission from McGhee prior to making medical appointments. (*Id.* 14.) When Plaintiff did not provide advance notice of her medical appointments, she was required to provide confirmation of the appointment to McGhee or risk losing personal time. (*Id.*)

At some point, Plaintiff began attended Employment Assistance Program ("EAP") counseling sessions. (*Id.*) On or about April 12, 2016, Plaintiff advised McGhee that she would be leaving her post at 2:45 p.m. for a 5:00 p.m. EAP appointment. (*Id.*) McGhee initially authorized Plaintiff's request but later required Plaintiff to provide proof of her EAP sessions or risk the time being charged against her annual leave. (*Id.*) Pursuant to the SSA's employee manual, however, SSA employees are only required to provide notice to their supervisors of their upcoming EAP counseling sessions. (*Id* 14-15.)

On or about June 24, 2016, McGhee issued Plaintiff a proposed notice of removal based on job performance and unsuccessful completion of the PAP. (*Id*. 15.) Plaintiff and one other African American woman were the only two employees served with proposed removal notices related to alleged failures to meet decisional writing timeframes. (*Id.*) Plaintiff was ultimately terminated. (*Id.*)

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject-matter jurisdiction exists. *Id.* "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir.2004)). Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

Moreover, where, as here, a plaintiff is proceeding pro se, her pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)).

## DISCUSSION

Defendant urges the Court to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction on grounds of preclusion. (Defendant's Motion ("Def's Mot.") 6-8, ECF No. 14-1.) Specifically, Defendant argues that because Plaintiff elected to pursue the termination of her employment as a union grievance, she is precluded by federal law from bringing the instant action. (*Id.*)

"The [Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (Oct. 13, 1978) ("CSRA")] requires unions and federal employers to include procedures for settling grievances in their collective bargaining agreements." *Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d Cir. 2006). The CSRA defines "grievance" to include any complaint "by any employee concerning any matter relating to the employment of the employee." *Id.*; *see also* 5 U.S.C. § 7103(a)(9)(A). The grievance procedure set out in a collective bargaining agreement is "the exclusive administrative procedure for resolving grievances [that] fall within the agreement's coverage." *Fernandez*, 471 F.3d at 52 (internal modifications omitted); *see also* 5 U.S.C. § 7121(a)(1). As an exception, federal employees aggrieved by discrimination may seek relief pursuant to any federal statute which prohibits such discriminatory practices. *Fernandez*, 471

5

F.3d at 52; 5 U.S.C. § 7121(d).  Importantly, although the CRSA permits federal employees to pursue discrimination claims through the grievance process or a federal complaint, an employee may not pursue them through both.  *Fernandez*, 471 F.3d at 52 ("[A]n employee who alleges a discriminatory personnel practice must elect to pursue his claim under either a statutory procedure or a union-assisted grievance procedure; he cannot pursue both avenues, and his election is irrevocable.")  Thus, by electing to pursue a remedy through a union, an employee commits to resolving her dispute through the processes provided by the applicable collective bargaining agreement, and may only appeal to the federal courts at the conclusion of that process.  *Id*. at 52, 54.

Defendant contends that because Plaintiff elected to arbitrate the issue of her termination through her union, she is required to first fully exhaust the remedies available to her under her union's grievance procedure.  (Def.'s Mot. 7.)  In other words, according to Defendant, Plaintiff's election to arbitrate her termination deprives this Court of jurisdiction over Plaintiff's complaint until the union's grievance process concludes.[3]  (Def.'s Mot. 7-8.)

Plaintiff does not dispute Defendant's contention that her termination, which she identifies as "the end result of all of the harassment," is the subject of the parties' arbitration.  (Plaintiff's Opposition Brief ("Pl.'s Opp.") 1, ECF No. 13.)  Plaintiff maintains, rather, that the instant complaint alleges unlawful conduct in addition to her termination.  (*Id*.)  And, to the extent that Plaintiff pleaded a cause of action predicated on the termination, Plaintiff has now voluntarily dismissed it.  (*Id*.)  Without comment as to the sufficiency of the remainder of

---

[3] Defendant's reliance on *Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d Cir. 2006) is sorely misplaced.  In that case, the claims the plaintiff asserted through both the grievance procedure and the EEO process were identical.  *Id*. at 55. In contrast, the complaint here includes several allegations that are unrelated to the sole issue the parties have agreed to arbitrate – Plaintiff's termination.  As such, *Fernandez* is inapposite.

Plaintiff's allegations, Plaintiff does complain of discriminatory conduct which predates her termination.  For example, Plaintiff alleges that only she was wrongly placed on timeframes, denied leave time, and subjected to retaliation after she complained of discriminatory treatment.[4] (Compl. 10, 13-14.)  These allegations are sufficient to bring the complaint outside the subject matter of the parties' arbitration.[5]

*   *   *

Defendant further contends that the Court should dismiss Plaintiff's claims because the parties' arbitrator has the authority to grant Plaintiff the relief requested in this action. (Def.'s Mot. 8.)  Even if true, however, Defendant has cited no authority that this fact acts to deprive Plaintiff of her statutory right to seek relief from this Court.  Accordingly, Defendant's motion to dismiss on this ground fails.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject-matter jurisdiction is GRANTED in part and DENIED in part.  Defendant's motion is GRANTED with

---

[4] Notably, absent from the complaint are any allegations related to any age discrimination.

[5] The facts of this case are not unlike those in *Upshur v. Summers*, No. 00-CV-2061, 2001 WL 274037, at *1 (S.D.N.Y. Mar. 20, 2001) (Chin, J.).  In *Upshur*, a defendant-employer sought dismissal of a plaintiff-employee's complaint based on lack of subject-matter jurisdiction. *Id*. at *2.  The plaintiff had filed an informal EEO complaint alleging discrimination; then filed a union grievance alleging retaliation based on a sole incident; and subsequently filed a formal EEO complaint alleging both race-based discrimination and retaliation. *Id*. at *1.  The defendant in *Upshur* contended that the plaintiff had irrevocably elected the union forum for arbitration of the disputes raised in his case, thereby divesting the court of subject-matter jurisdiction under 5 U.S.C. § 7121(d). *Id*. at *2.  The court denied the defendant's motion to dismiss, and found that the record did not indicate that the plaintiff sought to pursue his claims through the union's grievance process. *Id*. at *4.  The court held that the plaintiff would be precluded from seeking relief in the federal courts only for the events surrounding the alleged retaliation that provided the basis for his union grievance. *Id*.  The same conclusion is warranted here.

respect to Plaintiff's discrimination claim related to her termination.  Defendant's motion is

DENIED with respect to all of Plaintiff's remaining claims.

                                                                             SO ORDERED.

Dated: Brooklyn, New York                       /s/ LDH
       March 30, 2020                             LaSHANN DeARCY HALL
                                               United States District Judge